## In re DEININGER.

### (Circuit Court, D. Oregon. April 17, 1901.)

### No. 2,670.

INTERSTATE COMMERCE—STATE LEGISLATION AFFECTING—PROHIBITING SALE OF GAME OR FISH.

There is no unqualified right of property in game or fish, which, although reduced to possession, remain subject to the control of the state, in the exercise of its police powers; and a law making it a penal offense for a person to have trout in his possession for sale is a valid police regulation, and not an unlawful interference with interstate commerce, although such trout were brought for sale from another state, where they were lawfully caught.

On Petition for a Writ of Habeas Corpus and Order to Show Cause.

J. J. Fitzgerald and E. E. Merges, for the petitioner.

A. C. Spencer, for respondent.

BELLINGER, District Judge. The petitioner was convicted in the state court of having in his possession trout for sale, in violation of the game laws of Oregon, and was sentenced to pay a fine of $35. In default of payment, he has been imprisoned by the sheriff of the county. He therefore makes this application for a writ of habeas corpus, and this hearing is for an order upon the sheriff to show cause why the writ should not be granted. The facts in the case, briefly, are that the petitioner is the manager of the Chlopeck Fishing Company, doing business in Portland, Or.; that said company conducts a retail fish market in Portland; that the trout in question were purchased in the city of Seattle, in the state of Washington, where they had been lawfully caught, and were shipped from that state to the market of the company in Portland, for sale here.

It is contended for the petitioner that the law of Oregon which makes the possession of trout for sale, lawfully caught in another state, unlawful, is a restraint of interstate commerce, and is therefore void. In the case of Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793, it is held that a law of Connecticut which provides that no person shall at any time kill any woodcock, ruffed grouse, or quail for the purpose of conveying the same beyond the limits of the state, or shall transport or have in possession, with intent to procure the transportation beyond such limits, any such birds killed within such state, is legislation which it is within the constitutional power of the state to enact. In that case, as in this, it was contended that the act of the state of Connecticut was in restraint of interstate commerce, since it made the possession of the birds in question for the purpose of conveying the same beyond the state illegal, notwithstanding the fact that said birds were lawfully killed in the state of Connecticut. The decision is based upon the fundamental distinction that exists between the qualified ownership in game and the perfect nature of ownership in other property. If game when reduced to possession became an article of property, in the ordinary sense of the word, it would belong to commerce; otherwise, it is a subject of control by the state, in the exercise of its police power. There is,

in my opinion, no room to distinguish between the right to take game out of the state and the right to bring it within the state. Interstate traffic is affected as much in one case as in the other. It is not material that in one case the killing of game is discouraged by the limitation which the law puts upon its use, by prohibiting its exportation, while in the other the enforcement of the law against the taking of game is rendered practicable by making its possession for sale unlawful. The ultimate object sought in each case is the same, and the law in each case is a legitimate exercise of the police power of the state. The taking of game is not an industry. It is merely a diversion. If it is ever anything more than this, it is under primitive conditions of society, when industrial enterprise and commerce are not yet established. It is wholly immaterial whether the game was lawfully caught within the state of Washington or not. The violation of the laws of Washington imposes no duty in respect to the particular matter upon the state of Oregon. Its right to prohibit the possession of the interdicted game does not depend upon what has been done in another jurisdiction, but wholly upon the limited right of property which exists in game birds, animals, and fishes. The right to legislate without restraint, so far as the game within the state is concerned, is not questioned. When game is brought from another state, by whatever means, or for whatever purpose, or in whatever condition, it becomes, upon the moment of its introduction into the state, a part of the game of the state, and subject to the control of its laws. In the case of In re Davenport (C. C.) 102 Fed. 540, the court holds that one state does not have the constitutional power to prohibit traffic in game imported from another state. I regret my inability to adopt the view of the learned judge who decided that case. The respect which I have for his opinion has caused me to hesitate in reaching a conclusion different from his. The petition for a writ of habeas corpus is denied.